# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 29, 2005 Session

## STATE OF TENNESSEE v. BETTY GOUGE

**Appeal from the Criminal Court for Unicoi County**
**No. 5337     Robert E. Cupp, Judge**

---

**No. E2005-01358-CCA-R3-CD - Filed January 20, 2006**

---

The defendant, Betty Gouge, pled guilty to one count of sale of one-half gram or more of cocaine, a Class B felony, one count of possession with intent to sell one-half gram or more of cocaine, a Class B felony, and one count of possession with the intent to sell less than ten pounds of marijuana, a Class E felony. The Unicoi County Criminal Court sentenced her to eight years for each Class B felony and one year for the Class E felony to be served concurrently as a Range I, standard offender in the Department of Correction. The defendant appeals, contending that the trial court erred in denying her probation or alternative sentencing. We affirm the judgments of the trial court but we remand case number 5337, Count 3, to the trial court for the judgment to reflect that the defendant pled guilty and was found guilty.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part and Case Remanded for Entry of Amended Judgment**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

William B. Lawson, Erwin, Tennessee, for the appellant, Betty Gouge.

Paul G. Summers, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Melanie Futrell Gwinn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's possession of controlled substances and sale of cocaine to an undercover informant. On February 4, 2003, the defendant's cousin, acting as an undercover informant, went to the defendant's home and bought an "eight ball" of cocaine from the defendant. The defendant consented to a search of her home where officers found approximately 20 grams of cocaine, approximately 126 grams of marijuana, $1583 in the defendant's purse, and $553 in an envelope in the defendant's bedroom.

At the sentencing hearing on March 4, 2005, the defendant testified that she got the cocaine from Amy Teague, a woman who lived in her house. She said it was the only time she had ever sold drugs. She said she had been in a car accident and was hospitalized for three months with a head injury and other internal injuries. She said the head injury had affected her memory. She said that Ms. Teague only lived with her for three months and that she was trying "to get rid" of the cocaine when she sold it. She said she told her cousin that Ms. Teague had the cocaine and that her cousin said he would get rid of it for her. She said she took money for the cocaine because Ms. Teague owed her money. She said Ms. Teague gave her the cocaine as payment for the money she was owed. She said she was having financial difficulties and needed the money. She said she believed one gram of cocaine was worth two hundred dollars. She said the only income she had was her son's social security. She said she only sold drugs one time and would never sell drugs again. She said she had one prior conviction for public intoxication and two speeding tickets.

On cross-examination, the defendant testified that the $1583 she had in her purse when she was arrested came from her son's social security check and from her daughter to fix the driveway. She acknowledged officers found $553, her savings, in an envelope in her bedroom. She denied knowing about any needles or spoons with residue lying around her house. She said the marijuana found in her bedroom belonged to her. She said she paid $100 for the marijuana but would not say who sold it to her. She admitted officers also found three bags of marijuana, one bag of cocaine, scales, and rolling papers in the living room, all belonging to her. She said she used the scales to measure marijuana to give to her family. She said she did not sell the marijuana to her family but weighed it so they would know how much they had. She said she did not remember how much she charged for the cocaine she sold to her cousin.

On redirect examination, the defendant testified that she was involved in a car accident in 1990. She said that she considered herself a "borderline intellectual functioner" and that she had a hard time remembering things.

DEA Task Force Agent Ritchie Walker testified that he had been involved in over five hundred narcotics investigations. He said the defendant sold 3.2 grams of cocaine to the undercover informant. He said the defendant had 19.5 grams of cocaine in her possession. He said the defendant was correct in her testimony about a gram of cocaine being worth two hundred dollars on the street. He said the total value of all the cocaine the defendant possessed was approximately $4000. He said the normal price of an "eight ball" of cocaine was $250.

The trial court stated that it had reviewed the presentence report and that it had a hard time understanding it because of conflicting statements about where the defendant's son lived, what her address was, and when her husband had died. The presentence report states the defendant had a prior conviction for public intoxication and two speeding tickets. The report also shows the defendant left high school in the ninth grade and reported no prior employment. During the hearing, the trial court interjected many times to question the defendant further on her inconsistent statements about when her husband died, her finances, and who sold her the marijuana. Based on the defendant's lack of

candor, the trial court denied the defendant probation and alternative sentencing. In making its decision, the trial court stated:

> Well, I'm going to put you in jail because you won't tell me the truth, and that's a shame because I wouldn't have put you in jail probably if you'd told me the truth on everything, and you didn't. They found a lot of cocaine on you, not Amy, but on you. You were selling it. You had scales to measure marijuana. You had marijuana two or three different places. And you told me on this witness stand under oath that you gave it to your children but you weighed it out for them.
>
> . . . .
>
> But it's important that you weigh it out, wasn't it? See, you're lying to me, ma'am. You're lying to me. Well, I'm going to deny probation for you. I'm going to order you in jail today for lying to me. Your credibility is at issue with me, ma'am, which means if you get up here and lie on this witness stand, you'll do anything that we don't want you to do. You'll do everything we don't want you to do on probation.

On June 1, 2005, the trial court conducted a hearing to reconsider the defendant's sentence. The defendant told the trial court she was on methadone for her injuries she received in the car accident. She said she got methadone from a clinic in North Carolina. She said she was taken from the jail to the hospital after she thought she was having a heart attack. She said it was determined to be stress on her heart and she was released after twenty-four hours. The trial court stated:

> [S]he can still yet go to the methadone clinic in North Carolina. She can attend her son's thing. She looks physically fit today, and tells me that she's taking drugs because of -- I mean, methadone because of an accident. She's lying to me again. So, she's to report to jail -- I'll give her a week.

The trial court set an appellate bond of $50,000.

On appeal, the defendant contends that the trial court erred in denying her probation or alternative sentencing. She asserts that she is statutorily eligible for probation, that the crimes were nonviolent, and that she has a short criminal record. She also asserts that her mental agility is questionable and that she has a history of serious illness, head injuries, and bodily injuries. The state asserts that the trial court did not err in sentencing the defendant to the Department of Correction. It asserts the burden was on the defendant to prove she would be a favorable candidate for probation because the defendant was convicted of two Class B felonies and was not presumed favorable. The

-3-

state asserts the defendant's lack of candor reflects on the defendant's potential for rehabilitation and on depreciating the seriousness of the offense.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003).[1] However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d) (2003), Sentencing Commission Comments. This means if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5) (2003); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438.

The defendant is eligible for probation because she received an eight year sentence. See T.C.A. § 40-35-303(a). However, the burden is on the defendant to establish her suitability for total probation and "that probation will be in the best interest of the defendant and the public." State v. Ring, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001) (citing State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997)). In determining if the trial court should grant probation, it must consider the nature and circumstances of the offense; the defendant's criminal record; the defendant's social history; the defendant's present condition; and the deterrent effect on the defendant. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999). The trial court should also consider the defendant's potential for rehabilitation and treatment in determining the appropriate sentence. See T.C.A. § 40-35-103(5).

---

[1] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -210, -303 and -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 6, 7, 8. However, the amended code sections are inapplicable to the defendant's appeal.

The presumption of favorable candidacy for alternative sentencing extends to a defendant "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony." T.C.A. § 40-35-102(6) (2003). When the defendant is presumed to be an eligible candidate, the state can overcome the presumption with "evidence to the contrary." Id. Because the defendant was convicted of two Class B felonies, she is not presumed to be a favorable candidate for alternative sentencing. See id. Therefore, the state had no burden to justify confinement in this case. State v. Beverly Dixon, No. W2004-00194-CCA-R3-CD, Shelby County, slip op. at 8 (Tenn. Crim. App. June 30, 2005), app. denied (Tenn. Dec. 5, 2005) (citing State v. Joshua L. Webster, No. E1999-02203-CCA-R3-CD, Blount County, slip op. at 3 (Tenn. Crim. App. Dec.4, 2000)).

"The trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation." State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). This court has previously held that a defendant's lack of candor reflects on the defendant's rehabilitation potential and is a proper consideration in the trial court's determination of whether a defendant should receive an alternative sentence. See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). Even in cases when the defendant is presumed to be a favorable candidate for alternative sentencing, if the defendant lies while testifying, the presumption can be overcome. See State v. Catherine May Cooper, No. E2004-02515-CCA-R3-CD, Sullivan County, slip op. at 4-5 (Tenn. Crim. App. Nov. 4, 2005) ("[T]he trial court did not err in considering the defendant's lying under oath as a basis for denying alternative sentencing and probation.").

The record reflects the defendant has a short criminal history. However, the defendant had approximately 20 grams of cocaine, approximately 126 grams of marijuana, and $2136 in her possession on the day of the offense. The defendant admitted that the marijuana belonged to her but denied that the cocaine did. She admitted buying the marijuana, weighing it, and distributing it to her family. The defendant testified she had never had a job and dropped out of high school in the ninth grade. During the sentencing hearing, the defendant testified inconsistently about when her husband died, her finances, and who sold her the marijuana. The defendant reported in her presentence report that her husband died on January 17, 2001, then told the trial court that he died in 2002, then stated it may have been 2001. She testified that she was in "dire financial straits" but acknowledged that she had $2136 in cash when she was arrested and that her monthly bills did not exceed two thousand dollars. She testified that she was not going to reveal who sold her the marijuana, then she testified that she did not remember who sold it to her, and then she testified she did remember who sold it to her but did not reveal the source.

The trial court's findings that the defendant was untruthful and failed to accept responsibility for her crimes are supported by the record. Based upon the defendant's lack of candor and the seriousness of the current offenses, we conclude the trial court did not err in denying the defendant alternative sentencing and probation, and the defendant is not entitled to relief on this issue. We affirm the judgments of the trial court but we note omissions in the judgment for Count 3 in case number 5337 of the guilty plea and finding of guilt. We remand the case for entry of a corrected judgment for that count.

_____

JOSEPH M. TIPTON, JUDGE